**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                              CASE NO.:    6:23-bk-05179-TPG

**JERRY HARVEY AUDIO, LLC,**                        CHAPTER 11

       **Debtor.**
_____/


**PLAN OF REORGANIZATION**
**FOR JERRY HARVEY AUDIO, LLC**


COUNSEL FOR THE DEBTOR

R. SCOTT SHUKER, ESQ.
LAUREN L. STRICKER, ESQ.
SHUKER & DORRIS, P.A.
121 S. ORANGE AVENUE, SUITE 1120
ORLANDO, FLORIDA 32801


May 13, 2024

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                              CASE NO.:   6:23-bk-05179-TPG

JERRY HARVEY AUDIO, LLC,                            CHAPTER 11

         Debtor.
_____/

**PLAN OF REORGANIZATION**
**FOR JERRY HARVEY AUDIO, LLC**

  **JERRY HARVEY AUDIO, LLC** (the "Debtor" or "Reorganized Debtor" – where appropriate) by and through its undersigned counsel, hereby proposes the following plan of reorganization (the "Plan") pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

## I. ARTICLE I – DEFINITIONS

For the purpose of the Plan, the following terms will have the meanings set forth below:

  1. **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtor's Estates, including management fees, or commissions for service, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

2.      **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.      **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

4.      **Allowed Amount** shall mean the amount of an Allowed Claim.

5.      **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a)  by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the

3

Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

6.      **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed by the Debtor with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

7.      **Allowed Priority Non-Tax Claim** means a Priority Claim pursuant to § 507 of the Bankruptcy, except Priority Tax Claims under §507(a)(8) of the Bankruptcy Code, to the extent such Priority Non-Tax Claim is or becomes an Allowed Claim.

8.      **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the Bankruptcy Code, to the extent such Priority Claim is or becomes an Allowed Claim.

9.      **Allowed Secured Claim** means a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided herein.

10.      **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

11.      **Assets** means each and every item of property of the Debtor's Estate and every interest of the Debtor as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation:  (a) all real and personal property and Cash; (b) all rights, privileges, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the

laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, contract rights, or other rights, including without limitation rights to payment, contribution or distribution, whether due prior or subsequent to the Petition Date; and (d) all Executory Contracts, and other contracts, agreements, licenses, and leases.

12.     **Ballot Date** means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

13.     **Ballot** means the ballot accompanying the Plan and Disclosure Statement that will be sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to accept or reject the Plan.

14.     **Bankruptcy Case** means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code (Main Case No: 6:23-bk-04594-GER).

15.     **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, including any amendments thereto, in effect during the Bankruptcy Cases.

16.     **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

17.     **Bankruptcy Rule(s) or Rule(s)** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case, and as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

18.     **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

19.     **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

20.     **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

21.     **Claim** means "claim" as defined in Bankruptcy Code § 101(5).

22.     **Class 1 Claim, Class 2 Claim, Class 3 Claim,** *etc*., shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

23.     **Class or Classes** means any Class into which Claims or Interests are classified pursuant to the Plan.

24.     **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

25.     **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

26.     **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129.

27.     **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

28.     **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

29.     **Creditor** means "Creditor" as defined in § 101(1) of the Bankruptcy Code.

30.    **Debtor** refers to JERRY HARVEY AUDIO, LLC a Florida limited liability company.

31.    **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

32.    **Disbursing Agent** shall mean the Reorganized Debtor.

33.    **Disclosure Statement** means the Disclosure Statement filed by the Debtor describing the Plan and approved for distribution by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code, together with any amendments or modifications thereto.

34.    **Disputed Claim** means every Claim, or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

35.    **Distribution** means a distribution to the Holders of Allowed Claims.

36.    **Effective Date** means the date fifteen (15) days after the Bankruptcy Court has entered the Confirmation Order ("Anticipated Effective Date") and provided that no appeal of the Confirmation Order is pending; *provided*, *however*, that the Effective Date shall not occur unless and until (i) the timely satisfaction of the Effective Date Contingencies (defined in Section VII.C below), and (ii) the Debtor files the Effective Date Notice (defined in Section VII.C below), which Effective Date Notice shall not be filed until after satisfaction of the Effective Date Contingencies, but must be filed within five (5) days of the satisfaction of the Effective Date Contingencies. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the fifteenth (15th) day after the entry of the Confirmation Order provided that the Effective Date Contingencies have been satisfied and the Effective Date Notice has been filed by the Debtor.

37.    **Equity Interests** or **Interests** means any and all issued or authorized membership interests, common stock, stock options and warrants in the Debtor.

38.     **Estate** means the bankruptcy estate of the Debtor created under Bankruptcy Code § 541.

39.     **Executory Contract** means every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

40.     **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Cases after the Estate has been fully administered.

41.     **Final Distribution Date** shall mean the date as soon as practicable after the last to occur of: (a) the date that the last Claim becomes an Allowed Claim; or (b) the date upon which all Causes of Action have been liquidated and converted to Cash or abandoned.

42.     **Final Distribution** means the final Distribution to the Holders of Allowed Claims after all Causes of Action have been liquidated and converted to Cash or abandoned.

43.     **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

44.     **Holder** means the holder of a Claim or Interest, as applicable.

45.     **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124.

46.     **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

47.     **Interest** means an issued or authorized outstanding membership interest, a warrant or warrants for the issuance of such membership interests, or any other equity instruments in the Debtor.

48.     **Lien** means any mortgage, lien, charge, security interest, encumbrance, or other security device of like kind affecting any asset or property of the Debtor, but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by Debtor or any other party with standing to bring such a challenge.

49.     **Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

50.     **Person** means "person" as defined in Bankruptcy Code § 101(41).

51.     **Personal Property** means all tangible personal property of the Debtor.

52.     **Petition Date** means October 30, 2023, the date on which the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

53.     **Plan** means this Chapter 11 Plan of Reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

54.     **Plan Payments** means payments made by the Debtor pursuant to the terms of the Plan.

55.     **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

56.     **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

57.     **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

58.     **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

59.     ***Pro Rata*** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

60.     **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

61.     **Professional** means: (i) any professional retained by the Debtor in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

62.     **Projections** means the Debtor's financial projections for the operations during the 3-year period following Confirmation of the Plan, which are attached to the Disclosure Statement as **Exhibit A**.

63.     **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

64.     **Property of the Estate** means "property of the estate" as defined in Bankruptcy Code § 541.

65.     **Property Tax Administrative Claim** means every Claim of any state or local governmental unit that is an Administrative Claim for unpaid property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and every prorated portion thereof arising on and after the Petition Date until the Effective Date. Allowed Property Tax Administrative Claims will be classified and paid under the Plan as the Plan provides for Administrative Claims.

66.     **Real Property** means the real property located at 1321 Apopka Airport Road, Hangar 143, Apopka, FL 32712. The Real Property is co-owned with Mr. Jerry Harvey. It has an assessed value of $351,000 and is encumbered by mortgages held by Central Bank.

67.     **Real Property Sale** refers to the sale of the Real Property as more particularly described in the Settlement Agreement with Central Bank, which is attached to the Disclosure Statement as **Exhibit C** and incorporated herein by reference.

68.     **Reorganized Debtor** refers to the Debtor upon the Effective Date of the Plan.

69.     **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

70.     **Secured Claim** means a Claim secured by a Lien against a Debtor's Asset(s), or any part thereof, to the extent of the value of any interest in such Assets securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Bankruptcy Code § 553, in either case as determined pursuant to Bankruptcy Code § 506(a).

71.     **Secured Tax Claim** means a Claim secured by a statutory lien on Assets for unpaid taxes on such Assets.

72.     **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

73.     **Settlement Agreement** means that certain Settlement Agreement between the Debtor and Central Bank attached to the Disclosure Statement as **Exhibit C**.

74.     **Unclaimed Property** shall mean any cash, or any other property of the Debtor unclaimed for a period of six (6) months after any Distribution or, in the event that the Distribution was made on the Final Distribution Date, six (6) months after the Final Distribution Date.

75.     **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of Bankruptcy Code § 1124.

76.     **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. seq*. and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

77.     **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

## II.    ARTICLE II – ADMINISTRATIVE EXPENSES, PRIORITY CLAIMS, U.S. TRUSTEE FEES AND CLASSIFICATION AND TREATMENT OF UNIMPAIRED CLAIMS

### A.    Administrative Expense Claims.

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Expense Claim shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the Holder of the claim and the Debtor, or, if the Claim does not become Allowed prior to the Effective Date, on the date

the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Administrative Claims shall be paid from the Debtor's funds available and operational revenue as set forth in the Projections. The Debtor estimates Administrative Claims to be approximately $50,000.00, after deducting pre-petition and post-petition retainers.

**B.**     **Priority Claims.**

1)     Allowed Priority (Non-Real Estate) Tax Claims.

Except to the extent that the Holder and the Debtor have agreed or may agree to a different treatment, in full satisfaction of each Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive payment of such Claim in full on the Effective Date. Payment will be made on the Effective Date or the date on which such Priority Claim becomes Allowed. The source of payment for Allowed Priority (non-real estate taxes) Claims will be paid from the Debtor's funds available and operational revenue as set forth in the Projections attached to the Disclosure Statement; however, the current amount of such claims is $0.

2)     Allowed Priority Claims (Non-Tax).

Except to the extent that the Holder and the Debtor have agreed or may agree to different treatment, in full satisfaction of each Priority Claim (non-tax), exclusive of Priority Tax Claims under 11 U.S.C. § 507(a)(8), each Holder of an Allowed Priority Claim shall receive payment of such Claim in full on the Effective Date. Payment will be made on the Effective Date or the date on which such Priority Claim becomes Allowed. The source of payment for Priority Claims (non-tax) will be paid from the Debtor's funds available and operational revenue as set forth in the Projections; however, the current amount of such claims is $0.

**C.**     **United States Trustee Fees.**

All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of

the Bankruptcy Code. Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course from the Debtor's funds available and operational revenue as set forth in the Projections.

## III.    ARTICLE III – CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims treated under Articles IV of the Plan are divided into the following classes, which shall be mutually exclusive:

### A.    Summary of Classes in the Plan.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claim of Central Bank (Loan 1) | Impaired | Entitled to vote |
| 2 | Secured Claim of Central Bank (Loan 2) | Impaired | Entitled to vote |
| 3 | Secured Claim of JPMorgan Chase Bank, N.A. (Land Rover) | Impaired | Entitled to vote |
| 4 | Secured Claim of Ally Bank c/o AIS Portfolio Services, LLC (Bronco) | Impaired | Entitled to vote |
| 5 | Secured Claim of Navitas Credit Corp. (Laser engraver) | Impaired | Entitled to vote |
| 6 | Secured Claim of Navitas Credit Corp. (Laser engraver) | Impaired | Entitled to vote |
| 7 | Secured Claim of Small Business Administration (SBA) | Impaired | Entitled to vote |
| 8 | Secured Tax Claim of Orange County Tax Collector - 2022 Tangible Taxes | Impaired | Entitled to vote |
| 9 | Secured Tax Claim of Orange County Tax Collector - 2023 Tangible Taxes | Impaired | Entitled to vote |
| 10 | Secured Tax Claim of Orange County Tax Collector - 2023 Real Property Taxes | Impaired | Entitled to vote |
| 11 | Secured Tax Claim of JPL Investments Corp (Real Property Tax Certificate) | Impaired | Entitled to vote |
| 12 | Priority Tax Claim of Tennessee Department of Revenue | Impaired | Entitled to vote |
| 13 | Priority Tax Claim of New York State Department of Taxation and Finance | Impaired | Entitled to vote |
| 14 | Priority Tax Claim of Florida Department of Revenue | Impaired | Entitled to vote |
| 15 | General Unsecured Creditors | Impaired | Entitled to vote |
| 16 | Equity Interests | Unimpaired | Not entitled to vote |

B.     **Secured Claims.**

1.     <u>Class 1 – Allowed Secured Claim of Central Bank</u> – Class 1 consists of the Allowed Secured Claim of Central Bank relating to the secured credit facility referred to as "Loan #1" and more particularly described in the Settlement Agreement attached to the Disclosure Statement at **<u>Exhibit C</u>** and incorporated herein by reference. Class 1 is Impaired.

2.     <u>Class 2 – Allowed Secured Claim of Central Bank</u> – Class 2 consists of the Allowed Secured Claim of Central Bank relating to the secured credit facility referred to as "Loan #2" and more particularly described in the Settlement Agreement attached to the Disclosure Statement at **<u>Exhibit C</u>** and incorporated herein by reference. Class 2 is Impaired.

3.     <u>Class 3 - Secured Claim of JPMorgan Chase Bank, N.A.</u> – consists of the Allowed Secured Claim of JPMorgan Chase Bank, N.A. ("Chase") relating to vehicle financing for a 2022 Land Rover Defender. Class 3 is Impaired.

4.     <u>Class 4 - Secured Claim of Ally Bank c/o AIS Portfolio Services, LLC</u> – consists of the Allowed Secured Claim of Ally Bank c/o AIS Portfolio Services, LLC ("Ally") relating to vehicle financing for a 2022 Ford Bronco. Class 4 is Impaired.

5.     <u>Class 5 - Secured Claim of Navitas Credit Corp.</u> – consists of the Allowed Secured Claim of Navitas Credit Corp. ("Navitas") relating to equipment financing for a OM50 Plus Laser engraving Stm w/accessor. Class 5 is Impaired.

6.     <u>Class 6 - Secured Claim of Navitas Credit Corp.</u> – consists of the Allowed Secured Claim of Navitas Credit Corp. ("Navitas") relating to equipment financing for a Laser Engraving System. Class 6 is Impaired.

7.     <u>Class 7 - Secured Claim of Small Business Administration</u> – consists of the Allowed Secured Claim of Small Business Administration ("SBA") relating to a COVID-19 Economic Injury Disaster Loan (EIDL). Class 7 is Impaired.

C.    **Secured Tax Claims.**

      8.      <u>Class 8 – Secured Tax Claim of Orange County Tax Collector – 2022 Tangible Taxes</u> – Class 8 consists of the Allowed Secured Claim of the Orange County Tax Collector ("OCTC") for 2022 Tangible Personal Property Taxes. Class 8 is Impaired.

      9.      <u>Class 9 – Secured Tax Claim of Orange County Tax Collector – 2023 Tangible Taxes</u> – Class 9 consists of the Allowed Secured Claim of the Orange County Tax Collector ("OCTC") for 2023 Tangible Personal Property Taxes. Class 9 is Impaired.

      10.      <u>Class 10 – Secured Tax Claim of Orange County Tax Collector – 2023 Real Property Taxes</u> – Class 10 consists of the Allowed Secured Claim of the Orange County Tax Collector ("OCTC") for 2023 Real Property Taxes. Class 10 is Impaired.

      11.      <u>Class 11 – Secured Tax Claim of JPL Investments Corp. – 2022 Real Property Taxes</u> – Class 11 consists of the Allowed Secured Claim of JPL Investments Corp. ("JPL") which holds a tax certificate for 2022 Real Property Taxes. Class 11 is Impaired.

D.    **Priority Unsecured Claims**

      12.      <u>Class 12 – Priority Claim of the Tennessee Department of Revenue</u> – Class 12 consists of the Allowed Priority Claim of Tennessee Department of Revenue ("TN DOR") for 2023 Sales and Use Taxes. Class 12 is Impaired.

      13.      <u>Class 13 – Priority Claim of the New York State Department of Taxation and Finance</u> – Class 13 consists of the Allowed Priority Claim of New York State Department of Taxation and Finance ("NYS") for 2023 Sales Taxes. Class 13 is Impaired.

      14.      <u>Class 14 – Priority Claim of the Florida Department of Revenue</u> – Class 14 consists of the Allowed Priority Claim of the Florida Department of Revenue ("FL DOR") for Sales and Use Taxes. Class 14 is Impaired.

E.     **Unsecured Claims.**

15.     <u>Class 15 – Allowed General Unsecured Claims.</u>  Class 15 consists of all Allowed General Unsecured Claims against the Debtor. Class 15 is Impaired.

F.     **Equity Interests.**

16.     <u>Class 16 – Equity Ownership Interests.</u> Class 16 consists of any and all ownership interests currently issued or authorized in the Debtor.  Class 16 is Unimpaired.

IV.     **ARTICLE IV – TREATMENT OF IMPAIRED CLASSES.**

There are fifteen (15) Classes of Claims that are Impaired, and one (1) Classes of Interests that is Unimpaired.  Treatment for these classes is as follows

A.     **Secured Claims.**

1)     <u>Class 1 – Allowed Secured Claim of Central Bank</u>

Class 1 consists of the Allowed Secured Claim of Central Bank relating to the secured credit facility referred to as "Loan #1" and more particularly described in the Settlement Agreement attached to the Disclosure Statement as **<u>Exhibit C</u>** and incorporated herein by reference. Central Bank filed a proof of claim in the amount of $3,560,174.56 [Claim No. 6-1]. Central Bank shall have an Allowed Class 1 Secured Claim in the total amount of $659,000 and an Allowed Class 15 General Unsecured Claim in the amount of $2,901,174.56. The Class 1 Secured Claim is secured by: (a) that certain Mortgage, Assignment of Rents, Leases and Security Agreement ("Note One Mortgage"), which was recorded in Official Records for Orange County, Florida as Instrument Number 20190376926 pledging as security real property more particularly described therein, and commonly known as 1321 Apopka Airport Road, Hanger 143, Apopka, FL 32712 (the "Real Property"); and (b) all personal property described in the UCC Financing Statements described in the Settlement Agreement and in Claim No. 6-1] (The "**Class 1**

**Collateral**"). In full satisfaction of the Allowed Class 1 Secured Claim, Central Bank shall be treated and paid as set forth in the Settlement Agreement, including, without limitation that Central Bank shall: (a) retain its liens against the Class 1 Collateral and all other terms of the Loan # 1 Loan Documents shall remain in full force and effect for the duration of the payments as set forth in the Settlement Agreement; (b) be paid $305,000 of Central Bank's Allowed Secured Class 1 claim from the proceeds of the Real Property Sale described in the Settlement Agreement; and (c) be paid $354,000 of Central Bank's Allowed Secured Class 1 in monthly installments over two (2) years at 8% interest with a 20-year amortization and a 2-year balloon, resulting in a monthly payment of $2,961.00. The monthly installment payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term. Any payments made prior to the Effective Date shall be applied to the balance of the Allowed Class 1 Secured Claim. The Allowed Class 1 Secured Claim shall be paid monthly from the Debtor's funds available and operational revenue as set forth in the Projections. Upon payment of the Allowed Class 1 Secured Claim in full, the Allowed Class 1 Secured Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 1 is Impaired.

2)     <u>Class 2 – Allowed Secured Claim of Central Bank</u>

Class 2 consists of the Allowed Secured Claim of Central Bank relating to the secured credit facility referred to as "Loan #2" and more particularly described in the Settlement Agreement attached to the Disclosure Statement as **<u>Exhibit C</u>** and incorporated herein by reference. Central Bank filed a proof of claim in the amount of $2,461,522.43 [Claim No. 7-1]. Central Bank shall have an Allowed Class 1 Secured Claim in the total amount of $659,000 and an Allowed Class 15 General Unsecured Claim in the amount of $1,802,522.43. The Class 2

Secured Claim is secured by: (a) that certain Pari Passu Mortgage, Assignment of Rents, Leases and Security Agreement ("Note Two Mortgage"), which was recorded in Official Records for Orange County, Florida as Instrument Number 20200664430 pledging as security the Real Property and Personal Property and (b) all personal property described in the UCC Financing Statements described in the Settlement Agreement and in Claim No. 7-1] (The "**Class 2 Collateral**"). In full satisfaction of the Allowed Class 2 Secured Claim, Central Bank shall be treated and paid as set forth in the Settlement Agreement, including, without limitation that Central Bank shall: (a) retain its liens against the Class 2 Collateral and all other terms of the Loan # 2 Loan Documents shall remain in full force and effect for the duration of the payments as set forth in the Settlement Agreement; (b) be paid $305,000 of Central Bank's Allowed Secured Class 2 claim from the proceeds of the Real Property Sale described in the Settlement Agreement; and (c) be paid $354,000 of Central Bank's Allowed Secured Class 2 in monthly installments over two (2) years at 8% interest with a 20-year amortization and a 2-year balloon, resulting in a monthly payment of $2,961.00. The monthly installment payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term. Any payments made prior to the Effective Date shall be applied to the balance of the Allowed Class 2 Secured Claim. The Allowed Class 2 Secured Claim shall be paid monthly from the Debtor's funds available and operational revenue as set forth in the Projections. Upon payment of the Allowed Class 2 Secured Claim in full, the Allowed Class 2 Secured Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 2 is Impaired.

3)    <u>Class 3 – Secured Claim of JPMorgan Chase Bank, N.A.</u>

Class 3 consists of the Allowed Secured Claim of JPMorgan Chase Bank, N.A. ("Chase") relating to vehicle financing for a 2022 Land Rover Defender. Chase filed a proof of claim in the fully secured amount of $76,370.52 [Claim No. 4-1]. Chase shall have an Allowed Class 3 Secured Claim in the amount of $76,370.52, less amounts that have been paid during the pendency of this chapter 11 case. The Class 3 Secured Claim is secured by a perfected lien on the title of the 2022 Land Rover Defender, VIN No. SALE37RU4N2101672 (the "**Class 3 Collateral**"). In full satisfaction of the Allowed Class 3 Secured Claim, Chase shall retain its lien against the Class 3 Collateral and receive payment of its Allowed Class 3 Secured Claim in equal monthly installments over sixty (60) months with interest at 4.19%, resulting in a monthly payment of $1,414. Payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term. Any payments made prior to the Effective Date shall be applied to the balance of the Allowed Class 3 Secured Claim. The Allowed Class 3 Secured Claim shall be paid from the Debtor's funds available and operational revenue as set forth in the Projections. Upon payment of the Allowed Class 3 Secured Claim in full, the Allowed Class 3 Secured Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 3 is Impaired.

4)    <u>Class 4 – Secured Claim of Ally Bank c/o AIS Portfolio Services, LLC</u>

Class 4 consists of the Allowed Secured Claim of Ally Bank c/o AIS Portfolio Services, LLC ("Ally") relating to vehicle financing for a 2022 Ford Bronco. Chase filed a proof of claim in the fully secured amount of $38,326.36 (Claim No. 13-1). Ally shall have an Allowed Class 4 Secured Claim in the amount of $38,326.36, less amounts that have been paid during the pendency of this chapter 11 case. The Class 4 Secured Claim is secured by a perfected

lien on the title of the 2022 Ford Bronco Utility 2D Big Bend 4WD 2 .3L I4 Turbo VIN:1FMDE5AH6NLA97520 (the "**Class 4 Collateral**").  In full satisfaction of the Allowed Class 4 Secured Claim, Ally shall retain its lien against the Class 4 Collateral and receive payment of its Allowed Class 4 Secured Claim in equal monthly installments over sixty (60) months with interest at Prime (8.50%), resulting in a monthly payment of $787.00. Payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term. Any payments made prior to the Effective Date shall be applied to the balance of the Allowed Class 4 Secured Claim. The Allowed Class 4 Secured Claim shall be paid from the Debtor's funds available and operational revenue as set forth in the Projections. Upon payment of the Allowed Class 4 Secured Claim in full, the Allowed Class 4 Secured Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 4 is Impaired.

5)      Class 5 – Secured Claim of Navitas Credit Corp

Class 5 consists of the Allowed Secured Claim of Navitas Credit Corp. ("Navitas") relating to equipment financing for a OM50 Plus Laser engraving Stm w/accessor. Navitas filed a proof of claim in the fully secured amount of $30,717.38 (Claim No. 24-1). Navitas shall have an Allowed Class 5 Secured Claim in the amount of the lesser of $30,717.38 or the replacement value of the collateral, less amounts that have been paid during the pendency of this chapter 11 case. The Class 5 Secured Claim is secured by a perfected lien and UCC-1 (UCC # 2020130399) on the OM50 Plus Laser engraving Stm w/accessor (the "**Class 5 Collateral**").  In full satisfaction of the Allowed Class 5 Secured Claim, Navitas shall retain its lien against the Class 5 Collateral and receive payment of its Allowed Class 5 Secured Claim in equal monthly installments over sixty (60) months with interest at Prime (8.50%), resulting in a monthly payment

of $631.00. Payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term. Any payments made prior to the Effective Date shall be applied to the balance of the Allowed Class 5 Secured Claim. The Allowed Class 5 Secured Claim shall be paid from the Debtor's funds available and operational revenue as set forth in the Projections. Upon payment of the Allowed Class 5 Secured Claim in full, the Allowed Class 5 Secured Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 5 is Impaired.

6)    Class 6 – Secured Claim of Navitas Credit Corp.

Class 6 consists of the Allowed Secured Claim of Navitas Credit Corp. ("Navitas") relating to equipment financing for a Laser Engraving System. Navitas filed a proof of claim in the fully secured amount of $108,156.73 (Claim No. 25-1). Navitas shall have an Allowed Class 6 Secured Claim in the amount of the lesser of $108,156.73 or the replacement value of the collateral, less amounts that have been paid during the pendency of this chapter 11 case. The Class 6 Secured Claim is secured by a perfected lien and UCC-1 (UCC # 2023300985) on the Laser Engraving System (the "**Class 6 Collateral**").  In full satisfaction of the Allowed Class 6 Secured Claim, Navitas shall retain its lien against the Class 6 Collateral and receive payment of its Allowed Class 6 Secured Claim in equal monthly installments over sixty (60) months with interest at Prime (8.50%), resulting in a monthly payment of $2,219.00. Payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term. Any payments made prior to the Effective Date shall be applied to the balance of the Allowed Class 6 Secured Claim. The Allowed Class 6 Secured Claim shall be paid from the Debtor's funds available and operational revenue as

set forth in the Projections. Upon payment of the Allowed Class 6 Secured Claim in full, the Allowed Class 6 Secured Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 6 is Impaired.

7)    <u>Class 7 – Secured Claims of Small Business Administration</u>

Class 7 consists of the Allowed Secured Claim of Small Business Administration ("SBA") relating to a COVID-19 Economic Injury Disaster Loan (EIDL) dated on or about July 24, 2020, with a 30-year term. The SBA did not file a proof of claim but was scheduled by the Debtor. The current outstanding principal balance of the loan is $150,000, with accrued and outstanding interest totaling $17,612.11. The SBA shall have an Allowed Class 7 Secured Claim in the amount of the lesser of $164,113.82 or the value of the collateral. The Class 7 Secured Claim is secured by a junior perfected lien and UCC-1 (UCC # 202003870960) on virtually all the Debtor's assets (the "**Class 7 Collateral**"). In full satisfaction of the Allowed Class 7 Secured Claim, the SBA shall retain its lien against the Class 7 Collateral and receive payment of its Allowed Class 7 Secured Claim in equal monthly installments with interest at the contractual rate of 3.75%, over a period of 30 years, resulting in the contractual monthly payment of $761.00. Payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term. Any payments made prior to the Effective Date shall be applied to the balance of the Allowed Class 7 Secured Claim.  The Allowed Class 7 Secured Claim shall be paid from the Debtor's funds available and operational revenue as set forth in the Projections. Upon payment of the Allowed Class 7 Secured Claim in full, the Allowed Class 7 Secured Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 7 is Impaired.

B.    **Secured Tax Claims.**

8)    Class 8 – Secured Claims of Orange County Tax Collector – 2022 Tangible Taxes

Class 8 consists of the Allowed Secured Claim of the Orange County Tax Collector ("OCTC") for 2022 Tangible Personal Property Taxes for which it has filed a proof of claim in the amount of $11,609.72 [Claim No. 10-1]. Based upon the assessments determined by the Orange County Property Appraiser's Office for the Property, the OCTC shall have an Allowed Class 8 Secured Claim of $11,609.72. In full satisfaction of the Allowed Class 8 Secured Claim, OCTC shall receive payment of its Allowed Class 8 Secured Claim in equal monthly installments over sixty (60) months with interest at Prime (8.50%), resulting in a monthly payment of $239.00. Payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term. Any payments made prior to the Effective Date shall be applied to the balance of the Allowed Class 8 Secured Claim. Notwithstanding anything contrary contained herein, the Plan, or the Confirmation Order, the OCTC shall retain its customary state law remedies including all liens and statutory postpetition interest accruing at the rate prescribed by 11 U.S.C. § 511 and applicable nonbankruptcy law, which taxes, assessments, and interest may be collected by the appropriate taxing authority at the end of the payment term in accordance with customary and applicable state law pursuant to Chapter 197 of the Florida Statutes. Upon payment of the Allowed Class 8 Secured Claim in full, the Allowed Class 8 Secured Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 8 is Impaired.

9)    Class 9 – Secured Claims of Orange County Tax Collector – 2023 Tangible Taxes

Class 9 consists of the Allowed Secured Claim of the Orange County Tax Collector ("OCTC") for 2023 Tangible Personal Property Taxes for which it has filed a proof of

claim in the amount of $11,571.84 [Claim No. 11-1]. Based upon the assessments determined by the Orange County Property Appraiser's Office for the Property, the OCTC shall have an Allowed Class 9 Secured Claim of $11,571.84. In full satisfaction of the Allowed Class 9 Secured Claim, OCTC shall receive payment of its Allowed Class 9 Secured Claim in equal monthly installments over sixty (60) months with interest at Prime (8.50%), resulting in a monthly payment of $238.00. Payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term. Any payments made prior to the Effective Date shall be applied to the balance of the Allowed Class 9 Secured Claim. Notwithstanding anything contrary contained herein, the Plan, or the Confirmation Order, the OCTC shall retain its customary state law remedies including all liens and statutory postpetition interest accruing at the rate prescribed by 11 U.S.C. § 511 and applicable nonbankruptcy law, which taxes, assessments, and interest may be collected by the appropriate taxing authority at the end of the payment term in accordance with customary and applicable state law pursuant to Chapter 197 of the Florida Statutes. Upon payment of the Allowed Class 9 Secured Claim in full, the Allowed Class 9 Secured Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 9 is Impaired.

10)     <u>Class 10 – Secured Claims of Orange County Tax Collector – 2023 Real Property Taxes</u>

Class 10 consists of the Allowed Secured Claim of the Orange County Tax Collector ("OCTC") for 2023 Real Property Taxes for which it has filed a proof of claim in the amount of $6,379.54 [Claim No. 12-1]. Based upon the assessments determined by the Orange County Property Appraiser's Office for the Property, the OCTC shall have an Allowed Class 10 Secured Claim of $6,379.54. In full satisfaction of the Allowed Class 10 Secured Claim, OCTC shall receive payment of its Allowed Class 10 Secured Claim: (a) in equal monthly installments

over sixty (60) months with interest at Prime (8.50%), resulting in a monthly payment of $238.00; and (b) the balance shall be paid in conjunction with the closing of the Real Property Sale. Monthly payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term or until the balance is paid in conjunction with the closing of the Real Property Sale, whichever is sooner. Any payments made prior to the Effective Date and the Real Property Sale shall be applied to the balance of the Allowed Class 10 Secured Claim. Notwithstanding anything contrary contained herein, the Plan, or the Confirmation Order, the OCTC shall retain its customary state law remedies including all liens and statutory postpetition interest accruing at the rate prescribed by 11 U.S.C. § 511 and applicable nonbankruptcy law, which taxes, assessments, and interest may be collected by the appropriate taxing authority at the end of the payment term in accordance with customary and applicable state law pursuant to Chapter 197 of the Florida Statutes. Upon payment of the Allowed Class 10 Secured Claim in full, the Allowed Class 10 Secured Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 10 is Impaired.

11) <u>Class 11 – Secured Claims of JPL Investments Corp. – 2022 Real Property Taxes</u>

Class 11 consists of the Allowed Secured Claim of JPL Investments Corp. ("JPL") which holds a tax certificate for 2022 Real Property Taxes for which it has filed a proof of claim in the amount of $6,037.12 [Claim No. 12-1]. Based upon the assessments determined by the Orange County Property Appraiser's Office for the Real Property, JPL shall have an Allowed Class 11 Secured Claim of $6,037.12. In full satisfaction of the Allowed Class 11 Secured Claim, JPL shall receive payment of its Allowed Class 11 Secured Claim: (a) in equal monthly installments over sixty (60) months with interest at 5% resulting in a monthly payment of $114.00;

and (b) the balance shall be paid in conjunction with the closing of the Real Property Sale. Monthly payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term or until the balance is paid in conjunction with the closing of the Real Property Sale, whichever is sooner. Any payments made prior to the Effective Date and the Real Property Sale shall be applied to the balance of the Allowed Class 11 Secured Claim. Upon payment of the Allowed Class 11 Secured Claim in full, the Allowed Class 11 Secured Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 11 is Impaired.

      C.      **Priority Unsecured Claims**

      12)      <u>Class 12 – Priority Claim of the Tennessee Department of Revenue</u>

Class 12 consists of the Allowed Priority Claim of Tennessee Department of Revenue ("TN DOR") for 2023 Sales and Use Taxes for which it has filed a proof of claim in the amount of $9,246.24, of which $8,616.13 is claimed to be entitled to priority under 11 U.S.C. § 507(a)(8) [Claim No. 1-2]. TN DOR shall have an Allowed Class 12 Priority Claim of $8,616.13 and an Allowed Class 15 General Unsecured Claim in the amount of $630.11. In full satisfaction of the Allowed Class 12 Priority Claim, TN DOR shall receive payment of its Allowed Class 12 Priority Claim in equal monthly installments over sixty (60) months with interest at Prime (8.50%) resulting in a monthly payment of $163.00. Monthly payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term. Any payments made prior to the Effective Date shall be applied to the balance of the Allowed Class 12 Priority Claim. Upon payment of the Allowed Class 12 Priority Claim in full, the Allowed Class 12 Priority Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 12 is Impaired.

13)     <u>Class 13 – Priority Claim of the New York State Department of Taxation and Finance</u>

Class 13 consists of the Allowed Priority Claim of New York State Department of Taxation and Finance ("NYS") for 2023 Sales Taxes for which it has filed a proof of claim in the amount of $1,198.21, of which $90.51 is claimed to be entitled to priority under 11 U.S.C. § 507(a)(8) [Claim No. 3-1]. NYS shall have an Allowed Class 13 Priority Claim of $90.51 and an Allowed Class 15 General Unsecured Claim in the amount of $1,107.70. In full satisfaction of the Allowed Class 13 Priority Claim, NYS shall receive payment of its Allowed Class 13 Priority Claim in full on the 1st day of the month following the Effective Date. Any payments made prior to the Effective Date shall be applied to the balance of the Allowed Class 13 Priority Claim. Upon payment of the Allowed Class 13 Priority Claim in full, the Allowed Class 13 Priority Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 13 is Impaired.

14)     <u>Class 14 – Priority Claim of the Florida Department of Revenue</u>

Class 14 consists of the Allowed Priority Claim of the Florida Department of Revenue ("FL DOR") for Sales and Use Taxes. for which it has filed a proof of claim in the amount of $11,869.45, of which $11,256.91 is claimed to be entitled to priority under 11 U.S.C. § 507(a)(8) [Claim No. 28-1]. FL DOR shall have an Allowed Class 14 Priority Claim of $11,256.91 and an Allowed Class 15 General Unsecured Claim in the amount of $612.54. In full satisfaction of the Allowed Class 14 Priority Claim, FL DOR shall receive payment of its Allowed Class 14 Priority Claim in equal monthly installments over sixty (60) months with interest at Prime (8.50%) resulting in a monthly payment of $231.00. Monthly payments shall commence on the 1st day of the month following the Effective Date and continue on the 1st day of each month thereafter during the remainder of the term. Any payments made prior to the Effective Date shall be applied to the

balance of the Allowed Class 14 Priority Claim. Upon payment of the Allowed Class 14 Priority Claim in full, the Allowed Class 14 Priority Claim shall be fully satisfied, and any associated mortgages, liens, and Financing Statements shall be released, withdrawn, and terminated. Class 14 is Impaired.

      **D.**      **<u>Unsecured Claims.</u>**

      15)      <u>Class 15 – Allowed General Unsecured Claims</u>

Class 15 consists of all Allowed General Unsecured Claims against the Debtor. The Debtor estimates the total amount of the Allowed Class 15 General Unsecured Claims, excluding insiders, to be approximately $6,800,000.00. In full satisfaction of the Allowed Class 15 General Unsecured Claims, each Holder of an Allowed Class 15 General Unsecured Claim shall receive a pro rata share of $2,500,000 paid over five years at 6.5% interest with a 20-year amortization and a 5-year balloon. Payments during the 5-year term shall be made quarterly on the 1st day of each fiscal quarter, with payments commencing on the later of 1st fiscal quarter following the latter of: (a) the Effective Date; or (b) if the claim does not become allowed prior to the Effective Date, the date the Allowed amount of such Class 15 General Unsecured Claim is determined by Final Order of the Bankruptcy Court. The balloon payment due at the end of the 5-year term shall be made on the 1st day of the calendar following the final quarterly payment. In the event of a conversion and liquidation, there would be likely no distributions—i.e., $0 paid and a 0% recovery—to Holders of Allowed Class 15 General Unsecured Claims because the secured debts encumbering the Debtor's Property far exceed the value of the Property. Class 15 is Impaired.

E.     **Equity Interests.**

16)     Class 16 – Equity Ownership Interests

Class 16 consists of all equity and membership interests currently issued or authorized in the Debtor, 100% of which are held by Jerry Harvey. On the Effective Date, all existing interests in the Debtor shall continue into the Reorganized Debtor in the same proportions of such equity interests as they were held as of the Petition Date. No distributions will be made to equity security holders until the distributions to Class 15 have been made. Class 16 is Unmpaired.

V.     **ARTICLE V – UNEXPIRED LEASES AND EXECUTORY CONTRACTS.**

A.     **Leases and Executory Contracts.**

To the extent Debtor rejects any executory contracts or unexpired leases prior to the hearing on Confirmation, any party asserting a Claim, pursuant to section 365 of the Bankruptcy Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. The Debtor shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract. To the extent the Debtor does not file a motion to assume prior to Confirmation, any such lease or executory contract will be deemed rejected, provided, however, that such rejection shall not impact the assets/debt related to Classes 1 and 2.

B.     **Cure Claims and Rejection Damages Claims**

**A PROOF OF CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE UNDER THIS SECTION <u>MUST BE FILED NO LATER THAN THIRTY (30) DAYS AFTER THE ENTRY OF THE CONFIRMATION ORDER</u>.**

Any lessor, lessee, or other party to an assumed contract asserting a cure claim in connection with the assumption of any unexpired lease or executory contract, as contemplated by § 365(b) of the Bankruptcy Code, must file such cure claim with the Bankruptcy Court on or before the deadline to vote to accept or reject the Plan or such other deadline that is ordered by the Bankruptcy Court, asserting all alleged amounts accrued or alleged defaults through the Effective Date. Any lessor or other party to an executory contract or unexpired lease assumed by the Debtor failing to file a cure claim by such deadline shall be forever barred from asserting, collecting, or seeking to assert or collect any amounts or defaults relating thereto against the Debtor. The Debtor or the Reorganized Debtor, as applicable, shall have 30 days from the Effective Date to file an objection to any cure claim. Any disputed cure claims shall be resolved either consensually or by the Bankruptcy Court. Except as may otherwise be agreed to by the parties, the applicable Reorganized Debtor shall cure all undisputed cure claims within 180 days after the Effective Date. Except as may otherwise be agreed to by the parties, the applicable Reorganized Debtor shall cure all disputed cure claims within 120 days after the entry of a final order determining the amount, if any, of the Debtor's liabilities with respect thereto.

## VI.   ARTICLE VI - MEANS OF IMPLEMENTATION

### A.   Business Operations and Cash Flow.

The Plan contemplates that the Reorganized Debtor will continue to operate by increasing its revenues, reducing its operating and legal expenses, and restructuring its debt obligations. The Reorganized Debtor anticipates its post-confirmation operations will generate sufficient revenues to make the plan payments as set forth in the financial projections attached to

the Disclosure Statement as **Exhibit A** (the "Projections").[1] Payments required under the Plan will be funded by operational revenues. Additionally, funds generated from the Debtor's operations through the Effective Date will be used for plan payments; however, the Debtor's cash on hand at the time of confirmation will be available first for the payment of Allowed Administrative Expenses. For a complete detailing of the funds generated through the Effective Date, please refer to the Debtor's monthly operating reports filed with the Bankruptcy Court in the Bankruptcy Case. Copies of the Debtor's monthly operating reports are also available upon request to Debtor's counsel.

### B.    **Funds Generated During Chapter 11.**

For a complete detailing of the funds generated through the Effective Date, please refer to the Debtor's monthly operating reports filed with the Bankruptcy Court in the Bankruptcy Case (Doc. Nos. 55, 76, 81, and 89). Copies of the Debtor's monthly operating reports are also available upon request to Debtor's counsel.

### C.    **Disbursing Agent.**

The Reorganized Debtor will serve as the Disbursing Agent for all Distributions to be made under the Plan. In addition, the Reorganized Debtor will oversee and direct all claim objections and all other actions required to be taken under the Plan, the Bankruptcy Code, or by order of the Bankruptcy Court.

### D.    **Management and Control of the Reorganized Debtor.**

The operations of the Reorganized Debtor will continue to be overseen by the Debtor's current officers, managers, and directors, who will have uninterrupted authorization to

---

[1] The Projections were not complete as of the filing of the Plan and Disclosure Statement but will be separately filed and served to creditors along with the solicitation package.

maintain and manage the day-to-day normal business operations of the Reorganized Debtor with all the powers and duties that existed prior to Confirmation.

E.   **Other Provisions.**

1)   Procedures For Resolving Disputed Claims.

*a) Prosecution of Objections to Claims.*

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, Debtor shall have the exclusive right to make and file objections to all Claims, other than those claims deemed as "Allowed" under the terms of the Plan. All objections commenced prior to the Confirmation Date shall be finished by the Reorganized Debtor.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Confirmation Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any Order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the commencement of the Bankruptcy Case against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan. Except as set forth in the Plan, upon Confirmation the Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or

equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b) _Estimation of Claims._

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, which estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c) _Cumulative Remedies._

In accordance with the Plan, all of the aforementioned Claims' objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

d) *Payments and Distributions on Disputed Claims.*

As and when authorized by a Final Order, Disputed Claims or Interests that become "Allowed" shall be paid by the Reorganized Debtor such that the Holder of such Allowed Claim or Interest receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Interest until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor or Equity Interest Holder who holds both an Allowed Claim and a Disputed Claim or Interest will not receive a distribution until such dispute is resolved by settlement or Final Order.

e) *Allowance of Claims and Interests.*

i.    Disallowance of Claims.

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor. The Debtor upon the Effective Date shall have the exclusive right and authority to bring any causes of action under Chapter 5 of the Bankruptcy Code.

ii.     <u>Allowance of Claims.</u>

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

f)     *<u>Controversy Concerning Impairment.</u>*

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

## VII.     <u>ARTICLE VII – EFFECT OF CONFIRMATION</u>

### A.     <u>Authority to Effectuate the Plan.</u>

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. Unless otherwise noted herein, the Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

### B.     <u>Post-Confirmation Status Report.</u>

Within ninety (90) days of the entry of the Confirmation Order, the Reorganized Debtor will file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on

the United States Trustee, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences at its discretion.

### C. Conditions to Effectiveness.

The Effective Date shall not occur until: (i) the entry of the Confirmation Order by the Bankruptcy Court (which confirmation is further dependent upon the satisfaction of the contingencies set forth in this Plan); and (ii) the expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such order (items (i) – (ii) referred to together as the "Effective Date Contingencies"). Further, and in addition to the satisfaction of the foregoing Effective Date Contingencies, the Effective Date shall not occur until the Debtor files a notice of Effective Date with the Bankruptcy Court (the "Effective Date Notice"), which Effective Date Notice shall not be filed until all of the preconditions to the occurrence of the Effective Date set forth in the Plan have been met; provided however, that the Debtor shall file the Effective Date Notice no later than five (5) days after satisfaction of the Effective Date Contingencies. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the fifteenth (15th) day after the entry of the Confirmation Order provided that the Effective Date Contingencies have been satisfied and the Effective Date Notice has been filed by the Debtor.

## VIII. ARTICLE VIII – MISCELLANEOUS.

### A. Exculpation from Liability.

The Debtor, and its officers, directors, members, managers, managing members and Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure

Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; *provided*, *however*, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the Reorganized Debtor, and its respective agents have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION ASSERTING SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED; *PROVIDED THAT*, THE FOREGOING TIME LIMITATION SHALL NOT APPLY TO CLAIMS OF FRAUD, GROSS NEGLIGENCE, OR WILLFUL OR GROSS MISCONDUCT IN THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN. THE TIME TO BRING SUCH CLAIMS SHALL BE GOVERNED BY THE APPLICABLE STATUTE OF LIMITATION.**

Notwithstanding the foregoing, (i) the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan, and (ii) the Debtor's members, managers or executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

**B.      Police Power.**

No provision of Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to section 1141 of the Bankruptcy Code.

**C.      Revocation and Withdrawal of this Plan.**

The Debtor reserves the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order. If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

**D.      Modification of Plan.**

The Debtor may seek to amend or modify this Disclosure Statement and the Plan in accordance with section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents,

and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

        E.      **Retention of Jurisdiction.**

        After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to them herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court.  Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

        1.      All objections to the allowance of Claims and Interests and the compromise of Claims;

        2.      All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by the Debtor or the Reorganized Debtor, as applicable, in the ordinary course of business without a Bankruptcy Court order; provided, further, however, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

        3.      Any adversary proceedings or contested matters brought by the Debtor, the Reorganized Debtor, or the Disbursing Agent, the Causes of Action, the proceedings then pending

or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, or other proceedings calculated to generate payments to Holders of Allowed Claims;

4. All controversies and disputes arising under or in connection with the Plan;

5. The enforcement and interpretation of the provisions of the Plan, including without limitation any Debtor Default and the enforcement of any Ancillary Agreements;

6. To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7. Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8. All Claims arising from the rejection of any executory contract or lease;

9. Such other matters as may be provided for in the Bankruptcy Code or the Plan;

10. To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11. To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12. To hear and determine any action or controversy by or against the Reorganized Debtor.

F.    **Headings.**

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

G.    **Cramdown.**

The Code contains provisions that enable the Bankruptcy Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one Impaired Class of Claims.  Section 1129(b)(1) of the Bankruptcy Code states:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**DEBTOR BELIEVES THAT, IF NECESSARY, IT WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF**.

H.    **Discharge.**

As of the Effective Date and pursuant to § 1141 of the Bankruptcy Code, Debtor shall be discharged from any debt that arose before the Confirmation Date, and any debt of a kind specified in §§ 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not:

1.  A proof of claim based upon such debt is filed or deemed filed under

    § 501 of the Bankruptcy Code;

2.  A Claim based upon such debt is allowed under § 502 of the

    Bankruptcy Code; or

3.  The Holder of a Claim or Interest based upon such debt has accepted

    the Plan.

**I.**     **<u>Notices.</u>**

All notices required or permitted to be made in accordance with the Plan

shall be in writing and shall be delivered personally or by facsimile transmission or mailed by

United States Mail to the following:

<u>Counsel for the Debtor</u>:

R. Scott Shuker, Esquire
Shuker & Dorris, P.A.
121 S. Orange Avenue, Suite 1120
Orlando, Florida 32801

<u>Debtor</u>:

Jerry Harvey Audio, LLC
Attn: Jerry Harvey, President
111 West Jefferson Street, Suite 300
Orlando, FL 32801

<u>United States Trustee</u>:

George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida 32801

J.      **Manner of Payment.**

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Reorganized Debtor, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtor.

K.      **Compliance with Tax Requirements.**

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making Distributions shall comply with all tax withholding and reporting requirements imposed by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority.  If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

L.      **Transmittal of Distributions to Parties Entitled Thereto.**

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made.  Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this

Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

### M.    Distribution of Unclaimed Property.

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Allowed Claims in accordance with the provisions of this Plan.  However, checks issued by the Reorganized Debtor with respect to Allowed Claims will be null and void if not cashed within sixty days of the date of issuance and revest in the Reorganized Debtor. Requests for re-issuance of any such check shall be made in writing to the Reorganized Debtor.

### N.    Transfer Taxes.

Under § 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under this Plan, including the Settlement Agreement which is incorporated into the Plan, shall not be taxed under any law imposing a stamp tax or similar tax.

**RESPECTFULLY SUBMITTED** this 13th day of May 2024.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@shukerdorris.com
Lauren L. Stricker, Esq.
Florida Bar No. 91526
lstricker@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Avenue, Suite 1120
Orlando, Florida 32801
Tel: 407-337-2060
Fax: 407-337-2050
*Attorneys for the Debtor*